Jack GREENBURG et al., Plaintiffs,

v.

Judson W. COLLIER, Jr., etc., et al., Defendants.

Civ. A. No. 79–0477–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Dec. 13, 1979.

Murray J. Janus, Dennis W. Dohnal, Theodore I. Brenner, Bremner, Baber & Janus, Richmond, Va., for plaintiffs.

William G. Broaddus, County Atty., Michael K. Jackson, Asst. County Atty., County of Henrico, Richmond, Va., for defendants Broaddus & Martin.

Richard H. Matthews, Asst. City Atty., Jay A. Richardson, Deputy City Atty., City of Virginia Beach, Virginia Beach, Va., for J. Dale Bimson, Patrick L. Standing, J. Henry McCoy, Jr., John A. Baum, F. Reid

Ervin, George R. Ferrell, Barbara Henley, Dr. Clarence A. Holland, Donald W. Herrick, Meyera Oberndorf, J. Curtis Payne and Roger L. Riggs.

Harold P. Juren, Deputy City Atty., R. Barrow Blackwell, Alan M. Salsbury, Norfolk, Va., for Philip R. Trapani and Louis S. Hudgins.

Martin A. Donlan, Jr., Asst. Atty. Gen., Richmond, Va., for Judson W. Collier, Jr., Joseph H. Campbell and Andre Evans.

MERHIGE, District Judge.

## MEMORANDUM

Plaintiffs, several business entities and charitable organizations, instituted this action seeking a declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.* and injunctive relief. Jurisdiction is premised on 28 U.S.C. §§ 1331, 1343.

Plaintiff business entities ("the businesses") offer services and facilities for use by various organizations on a for-profit basis. Plaintiff charitable organizations ("the charities") were established for either religious, charitable, community or educational purposes. The businesses provide these services and facilities in connection with games of chance including, *inter alia*, bingo, instant bingo and raffles ("bingo"). The charities are among those organizations trading with the businesses.

Defendants are public officials serving in the jurisdictions wherein the businesses operate. Defendants are responsible for enforcing the state laws regulating bingo. In fulfilling this duty defendants may seek civil or criminal penalties against alleged violators.

The instant suit challenges the constitutional validity of Va.Code Ann. § 18.2–340.-9(D) (Cum.Supp.1979). That section provides that no building may be used for conducting bingo games on more than two days in any calendar week. Certain exceptions from the two day limitation are provided, however. Fire departments, rescue squads and qualified charitable organizations are exempted from § 18.2–340.9(D) if

they own the facilities in which the bingo games are conducted. The charities contend that they would meet this exemption but for the fact that they rent, rather than own, bingo facilities.

The plaintiffs maintain that § 18.2–340.-9(D) denies them equal protection of the law. Plaintiffs also contend that the two day limitation also constitutes a deprivation of their property rights without due process.

Of immediate concern is plaintiffs' desire to depose the Hon. Ralph L. Axselle, Jr., a member of the House of Delegates of the Virginia General Assembly. Because Del. Axselle is not a party to the instant action a brief explanation of his involvement is in order.

The 1978 session of the Virginia General Assembly adopted House Joint Resolution No. 115. That resolution created a subcommittee that was charged with conducting a comprehensive study of the state's bingo laws. Del. Axselle served as chairman of the subcommittee throughout its existence. At the conclusion of its study the subcommittee recommended that the state's bingo laws be revised. The subcommittee's specific recommendations were incorporated in House Bill 1219; which contained the two day limitation of § 18.2–340.9(D). House Bill 1219 was enacted by the 1979 Session of the Virginia General Assembly.

Del. Axselle has moved to quash the subpoena compelling his appearance for the taking of his deposition. The defendants have also filed a motion in limine praying that plaintiffs' inquiry be limited to matters other than the motivation of Del. Axselle or the General Assembly in enacting § 18.2–340.9(D). Plaintiffs have responded to the motions and the Court has heard argument on the issues. The motions are thus ripe for disposition and, because each presents similar questions under the speech or debate clause, will be considered together.

Del. Axselle, and defendants, contend that he is beyond the reach of the subpoena by virtue of the speech or debate clause of the Constitution of Virginia. Article IV, § 9 therein provides, in pertinent part that:

Members of the General Assembly shall, in all cases except treason, felony, or breach of the peace, be privileged from arrest during the sessions of their respective houses; *and for any speech or debate in either house shall not be questioned in any other place.* (Emphasis added).

The parties have represented to the Court that the Virginia Supreme Court has not had occasion to construe the scope of the Virginia speech or debate clause.

There is, however, considerable authority applying and interpreting the speech or debate clause of the United States Constitution, Article I, § 6. The state and federal immunities are very similar in their wording.[1] Further, they appear to be based upon the same historical and public policy considerations. *See Tenney v. Brandhove,* 341 U.S. 367, 372–75, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). For these reasons the Court is satisfied that the cases construing the federal speech or debate clause are valuable precedent in the instant suit.

Plaintiffs, in their opposition to the motions, concede that Del. Axselle may not be questioned with regard to the performance of his duties as a legislator. Rather, plaintiffs maintain that Del. Axselle may be questioned about press releases issued by him or his speeches outside the Virginia General Assembly. It is apparent, however, that plaintiffs' inquiry will not be limited to the content of statements not enjoying speech or debate clause protection. Plaintiffs' primary objective in deposing Del. Axselle is to "ascertain the true purpose of the legislation." *Plaintiffs Memorandum of Law in Opposition to Motion to Quash* at 2. Such an inquiry would necessarily implicate Del. Axselle's motivation in supporting House Bill 1219.

The memoranda submitted by the parties and Del. Axselle cite a host of cases. The issues may be resolved, however, without the Court addressing all of those authorities. Recent decisions have made clear that the speech or debate clause questions may be resolved upon consideration of a limited number of principles.

 Plaintiffs' distinction between protected and unprotected speech or debate finds support in *United States v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972). There the Court distinguished "legislative" activities from "political" activities. Legislative activities are deemed to be those which are generally performed in Congress and which are an integral part of the legislative process and the business before the assembly.[2] Political activities, on the other hand, may be characterized as those furthering interests distinct from the legislative responsibility, *e. g.* preparing news releases or assisting constituents in their dealings with executive agencies. Only those activities properly termed legislative are protected from inquiry by the speech or debate clause. *Brewster, supra* at 512, 92 S.Ct. 2531.

 The content of Del. Axselle's news releases and speeches outside the General Assembly is not protected from inquiry for it is clear that those activities were not a part of the legislative process. *Hutchinson v. Proxmire,* 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979); *United States v. Johnson,* 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966). Plaintiffs, if they desire, may thus depose Del. Axselle regarding the content of these political activities.

 That conclusion does not resolve the issue in its entirety, however, for plaintiffs seek to establish more than the mere content of Del. Axselle's press releases and speeches. As stated before, plaintiffs wish

---

1. Article I, § 6, in pertinent part provides:
 They shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from same; and for any Speech or Debate in either House; they shall not be questioned in any other Place.

2. Speech or debate clause protection extends to legislative activities even if they are not performed within the confines of the legislative hall. *See, e. g. Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972) and the discussion in *Brewster, supra,* 408 U.S. at 514 and 515, 92 S.Ct. 2531.

to establish Del. Axselle's perception of the purpose of. House Bill 1219. Del. Axselle's perception of a bill's purpose necessarily implicates his motivation in supporting or opposing a proposed law. The question thus presented is whether Del. Axselle's legislative motivation may be established through an inquiry into statements which are not protected by the speech or debate clause. For the reasons which follow, the Court is of the opinion that this question must be answered in the negative.

■ The protection of a legislator's motivation in discharging his public responsibility is at the very core of the speech or debate clause. Legislative motive is beyond inquiry whether it is sought to be established through legislative or political activities. In *Brewster* the Court stated:

> It is beyond doubt that the Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process *and into the motivation for those acts. Brewster, supra* at 525, 92 S.Ct. 2544. (Emphasis added).

And, in *Johnson, supra,* it was said,

> The essence of such a charge in this context is that the Congressman's conduct was improperly motivated, and as will appear that is precisely what the Speech or Debate Clause generally forecloses from executive and judicial inquiry. *Johnson, supra,* at 180, 86 S.Ct. at 755.

The speech or debate clause thus precludes inquiry into a legislator's motives without regard to whether the inquiry is through legislative or political activities.

The Court is satisfied that this conclusion does not extend speech or debate protection beyond that which is necessary to preserve the integrity of the legislative process. The important public purposes for protecting legislative motive from inquiry are reflected in the speech or debate clause.[3] Those policy values would be subordinated by permitting inquiry into the motive for a legislative act on the basis of a political

statement. To agree with plaintiffs' position would amount to a finding that the speech or debate protection had been waived. As will be seen, *infra,* that conclusion is untenable under the strict standards applicable to speech or debate clause waiver.

Plaintiffs' final contention in opposing the motions is that Del. Axselle has waived the protection of the speech or debate clause. Plaintiffs would have the Court find a waiver in the affidavit which Del. Axselle submitted in this action. Upon the instruction of *United States v. Helstoski,* 25 Cr.L. 3150 (1979) the Court rejects plaintiffs' argument.

For present purposes the Court is willing to read the affidavit in its broadest meaning. Plaintiffs thus describe the legal consequences of the affidavit in this manner:

> In said affidavit, Delegate Axselle described the history of the subject legislation and certain hearsay material was incorporated by reference which he stated was a source of information in the legislative process that culminated in the passage of the challenged statute. Presumably, Delegate Axselle identified and submitted such hearsay material as at least partial justification for his support of the legislation. *Plaintiffs' Memorandum of Law in Opposition to Motion to Quash* at 5.

Plaintiffs contend that the affidavit, when read in this light, demonstrates that the protection afforded Del Axselle's motivations has already been breached. From this the waiver is said to follow.

■ Even if plaintiffs' premise be true, the conclusion is without merit. In *Helstoski, supra* it was said that " . . . waiver can be found only after explicit and unequivocal renunciation of the protection. The ordinary rules for determining the appropriate standard of waiver do not apply in this setting." *Helstoski, supra* at 3154. There can be no doubt that the standard is

---

3. *See* the discussion in *United States v. Johnson,* 383 U.S. 169, 177–80, 86 S.Ct. 1231, 20 L.Ed.2d 132 (1966) and the cases cited therein.

as strict as that suggested by the ordinary meaning of the Court's statement.[4] Del. Axselle's affidavit is certainly not an "explicit and unequivocal renunciation" of his speech or debate clause protection.

In conclusion, plaintiffs may inquire into activities which are properly described as political. Plaintiffs may not, however, question Del. Axselle with regard to any legislative activity or his motives for same. Within this understanding the motion to quash the subpoena is denied, and the motion in limine is granted.

An appropriate order will issue.

---

**4.** The Court adopted the strict waiver standard despite the fact that Helstoski knew he could invoke the speech or debate clause and yet testified on ten occasions about his practices in introducing legislation. Further, Helstoski had also waived his Fifth Amendment right to remain silent.